## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY FLANAGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1462 |
| | ) | |
| OFFICE OF THE CHIEF JUDGE OF THE | ) | Judge Rebecca R. Pallmeyer |
| CIRCUIT COURT OF COOK COUNTY, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

In August 2002, Plaintiff Kimberly Flanagan filed a charge of employment discrimination against her employer, the Cook County Adult Probation Department ("Adult Probation Department") with the Equal Employment Opportunity Commission ("EEOC"). Flanagan, a probation officer, alleged that managers in the Adult Probation Department had discriminated against her on the basis of her race and gender by failing to promote her and by failing to assign her to a weapons-carrying unit. After receiving notification of her right to sue from the EEOC, Plaintiff filed a complaint of race and sex discrimination against Defendant, the Office of the Chief Judge of the Circuit Court of Cook County, Illinois ("Cook County"), in this court in December 2002. In March 2006, she filed a second lawsuit, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964. The two cases were consolidated, and, following a 10-day trial, a jury returned a verdict for Defendant on the sex discrimination claim, but found for Flanagan on the retaliation claim.

Plaintiff now moves for attorneys' fees and costs as a "prevailing party" under the Civil Rights Attorney's Fees Act of 1976. Defendant does not object to Plaintiff's petition in its entirety. Rather, Defendant opposes Plaintiff's motion to the extent that Flanagan seeks remuneration for work on her unsuccessful discrimination claims as well as her successful retaliation claim. Defendant contends that Plaintiff is entitled to no more than $149,768.62. As explained here, the court concludes Plaintiff is entitled to remuneration for her reasonable attorneys' fees and costs in

the amount of $230,188.42.

## **BACKGROUND**

Plaintiff Kimberly Flanagan, an African-American woman, was hired as a probation officer for the Cook County Adult Probation Department (a unit of the Circuit Court of Cook County) in February 1999. (Flanagan, 1/23/07 p.m. Trial Tr. 20:10-12.) On August 28, 2002, Plaintiff filed charges of race and sex discrimination against Cook County with the EEOC. On December 18, 2002, after receiving notification of her right to sue, Plaintiff filed a complaint in this court, alleging that Cook County discriminated against her based on her race and sex by failing to promote her or transfer her to one of several weapons-carrying units within the Adult Probation Department. *(Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County,* Case No. 02-cv-9190, Compl. at 4-6.) Flanagan further alleged that Defendant discriminated against her on the basis of her race and sex by refusing her repeated requests for transfer, by imposing unfair conditions on her weapons qualification tests, and by conducting improper psychological testing to justify its refusal to transfer her. (*Id.* at 8-9.) On July 12, 2004, Judge Plunkett granted summary judgment in Defendant's favor on Plaintiff's race discrimination claim, but found disputes of material fact requiring a trial on her sex discrimination claim. (Case No. 02-cv-09190, Minute Order, D.E. 34.)[1]

While her discrimination claim was pending, Flanagan continued to work for the Adult Probation Department, where she experienced what she regarded as retaliation in response to her discrimination suit. She filed a second complaint in this court on March 6, 2006, against Cook County and four of its employees: Donna Vaughan, Carolyn Lisle, Phil Loizon, and Michael Dickerson. *Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County,* Case No. 06-cv-1462. In her 2006 complaint, Plaintiff alleged that Cook County and the individually-named Defendants had subjected her to "heightened scrutiny, harassment, and disciplinary action" as the

---

[1] The designation "D.E." refers to the docket entry number of the cited document.

result of her initial discrimination suit. (Case No. 06-cv-1462, Compl. at 4.) On April 21, 2006, Judge Plunkett granted Plaintiff's motion for consolidation of the sex discrimination claim and retaliation claim. (Case No. 02-cv-09190, Minute Entry, D.E. 71.) The consolidated cases were reassigned to this court. The court dismissed Flanagan's claims against the individual Defendants—Vaughan, Lisle, Loizon, and Dickerson—in their individual capacities on January 17, 2007 on grounds of qualified immunity. (Case No. 02-cv-09190, Order, D.E. 82.) The court denied Defendants' motion to sever the discrimination claims from the retaliation claims, however, (Case No. 02-cv-09190, Minute Entry, D.E. 78), and the consolidated claims were tried to a jury in January 2007. (Case No. 06-cv-1462, Minute Entry, D.E. 46.)

In light of the parties' dispute about the attorney time for which Flanagan is entitled to compensation, the court reviews the trial evidence briefly. Flanagan presented evidence of what she claimed was retaliatory conduct that began on March 17, 2004. The first incident was a confrontation between Flanagan and then-Chief Probation Officer Veronica Ballard. During a training session, Flanagan made comments in which she expressed doubts about the value of a new training program and characterized probation officers as "law enforcement" officers. (Harris, 1/22/07 p.m. Trial Tr. 78:25-79:11.) An internal debate about whether probation officers were meant to enforce the law or facilitate rehabilitation had long divided the Adult Probation Department. Ballard responded—in the hearing of the entire group—that if Flanagan "did not like what she [Ballard] was telling her, that she [Flanagan] needed to find a new job." (Harris, 1/22/07 p.m. Trial Tr. 79:12-18). Ballard and Flanagan clashed further at a subsequent meeting when Ballard accused Flanagan of being inattentive during the training session and told her that "she couldn't stand her." (Lisle 1/17/07 Trial Tr. 111:8-112-3; 51:17-52:3; Harris 1/22/07 p.m. Trial Tr. 83:15-84:5).

In her testimony, Flanagan described several other incidents that followed the Ballard

3

encounter.[2] Defendant attempted to impeach this testimony (*see e.g.,* Flanagan 1/23/07 p.m. Trial Tr. 794-97; 1/24/07 a.m. Trial Tr. 850-852) and called witnesses to rebut it. The jury ultimately found in favor of Defendant Cook County on Flanagan's sex discrimination claim, but ruled for Flanagan on the retaliation claim, awarding her $205,000. (Judgment in Civil Case No. 02-cv-9190, dated 1/29/07; Case No. 06-cv-1462, Order, D.E. 53; Verdict Form, D.E. 54.) The court later remitted the award to $75,000, which Plaintiff accepted. (Case No. 06-cv-1462 Order, D.E. 85; Minute Entry D.E. 87.) She now seeks an award of her reasonable attorneys' fees and costs under the Civil Rights Attorney's Fees Act of 1976. 42 U.S.C. §1988.

## DISCUSSION

**Legal Standards Governing Fee Awards**

The Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. §1988, authorizes district courts to award reasonable attorneys' fees to "prevailing" parties in civil rights litigation. Status as a prevailing party is a threshold question under § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The relevant inquiry is whether the Plaintiff "has succeeded on 'any significant issue in litigation which achieved some of the benefit the parties sought in bringing the suit.'" *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791-92 (1989). The parties do not dispute that the Plaintiff is a prevailing party for the purposes of § 1988, but Defendant argues that the amount she is entitled to recover must be reduced to account for the fact that she prevailed only on her retaliation claim.

In assessing this dispute, the court notes, first, that "there is no precise rule or formula" for making reasonable fees determinations. *Hensley*, 461 U.S. at 437. Nevertheless, the court's

---

[2] A more complete description of Plaintiff's complaints is set forth in the court's order of September 28, 2007. (Case No. 06-cv-1462, Order, D.E. 70.) In brief, Flanagan alleged that her scores on performance evaluations were improperly changed, that she was maliciously and wrongly investigated for misconduct, that she was placed on unfavorable duty, and that she was improperly harassed about the appropriateness of her work clothing.

discretion is subject to recognized principles. "[I]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award . . . . [T]he district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. This calculation results in the lodestar amount, which the court may adjust upward or downward based on other considerations that are unique and specific to the case at hand. *Id.* Among the factors the court considers are those identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and cited with approval in *Hensley* itself. 461 U.S. at 429-30.[3]

When, as in this case, a plaintiff has been successful on some claims and unsuccessful on others, the crucial question is whether her successful and unsuccessful claims are related. "[W]here a claim on which a plaintiff won is unrelated to a claim on which she lost, the plaintiff should not recover for the unsuccessful claim." *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 583 (7th Cir. 1996). To put it another way, "a plaintiff who fails to prevail on a claim distinct from her other claims is not entitled to remuneration for unsuccessful work." *Id., citing Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988). The Seventh Circuit has explained that a "separate claim is an argument for additional relief for a distinct wrong." *Wade v. Soo Line Railroad Corp.*, 500 F.3d 559, 563 (7th Cir. 2007). Where the plaintiff presents distinctly different claims for relief that are based on different facts and legal theories, the plaintiff may not recover

---

[3] The factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and abilities of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) awards in similar cases.

attorney's fees for time expended on an unsuccessful claim. *See Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987).

**Determining the Fees Recoverable for Plaintiff's Successful Claim**

This Circuit long ago recognized that "a claim of discrimination and a claim of retaliation for opposing that discrimination" are distinct. *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987). "Such causally related claims . . . are sequential but not 'related for purposes of *Hensley*. A plaintiff should not be rewarded for a failed attempt to base liability on conduct that did not result in an actionable wrong to him, even if the conduct closely precedes, or follows close on the heels of, conduct that was wrongful.'" *Merriweather*, 103 F.3d at 583, *quoting Lenard*, 808 F.2d at 1246. As the Court of Appeals observed in *Merriweather*, "there are undoubtedly cases where discrimination and retaliation claims are so discrete that a plaintiff who succeeds on only one claim would merit only a drastically reduced fee award." 103 F.3d at 584.

Although claims of discrimination and retaliation are, thus, not *per se* related for *Hensley* purposes, the underlying facts supporting the two claims may nevertheless be so closely linked that "a successful claim for [retaliation] could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge." *Id*. "[W]hen claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Proof of discrimination is not an element of the retaliation claim, but the court may, within its discretion under § 1988, determine that the facts supporting a claim of discrimination are so integral to the retaliation claim as to make the attorneys' work on these related issues compensable. *Merriweather*, 103 F.3d at 584.[4]

---

[4] The trial court's opinion, upheld and quoted on appeal in *Merriweather,* reads: "[T]he retaliation claim] could not have been tried fairly without evidence of the events that led to the underlying discrimination charge and that led up to discharge. The finder of fact could not make
(continued...)

6

In Plaintiff Flanagan's case, the court notes that Plaintiff's separate claims of discrimination and retaliation do not arise from identical facts and circumstances. Plaintiff initially filed charges of discrimination with the Illinois Department of Human Rights and the EEOC on August 28, 2002, and filed a discrimination complaint with this court on December 18, 2002. Plaintiff's retaliation claim arises out of actions that Adult Probation Department supervisors took against her years later, between March 2004 and the summer of 2006. Nor, as this Circuit has held since *Lenard*, do the claims of retaliation and discrimination generally present related legal theories. Although Plaintiff's retaliation claims relate to her earlier complaints of discrimination, the facts giving rise to those earlier complaints occurred a full two years prior to any incident giving rise to her retaliation claim and the two claims rely on distinct legal theories. Plaintiff is, therefore, not entitled to a wholesale recovery of all fees accumulated in work on both claims. She may recover only for those efforts that contributed to the success of the retaliation claim.

The discrimination and retaliation claims in this case were, however, sufficiently linked that a successful retaliation claim could not have been presented effectively without some review of the facts leading to the underlying discrimination claim. To satisfy the elements of a Title VII retaliation case, "the plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII." *Hamber v. St. Vincent Hosp. and Health Care Center*, 224 F.3d 701, 707 (7th Cir. 2000). As such, evidence of the initial discrimination would have been relevant and admissible had Plaintiff decided only to pursue her retaliation claims. This court said as much when it denied Defendant's motion *in limine* to exclude evidence of pre-2002 discrimination, observing there that "[a]lthough incidents prior to 2002 are not independent

---

[4](...continued)
the credibility determination by isolating the events of discharge from the course of the parties' relationship . . . [M]y best estimate is that counsel would have had to spent [sic] 90 percent of the total remaining time he spent on the case."

grounds for relief, they may be presented as evidence . . . that [Flanagan's] sex discrimination claims were made in good faith." (Minute Entry, D.E. 82, at 1.)

Moreover, Plaintiff's case at trial turned substantially on whether the jury found Flanagan to be a credible witness and believed Flanagan's version of events. To prevail on her retaliation claim, Flanagan's attorneys were required to offer evidence of the alleged discrimination in order to bolster Flanagan's credibility and to give context to her retaliation claim; that evidence contributed to Flanagan's ultimate success on the retaliation claim. What the Seventh Circuit observed in *Merriweather* holds true here: "a competent attorney must do more at trial than present just the bare bones of his prima facie case, particularly if he wishes to prevail where the case rests heavily on the credibility of the witnesses." 103 F.3d at 584. Given that (1) the success of Plaintiff's retaliation claim depended to some extent on her ability to establish a reasonable good-faith belief in the legitimacy of her discrimination claims, (2) Plaintiff's credibility was a central issue in the case, and (3) review of the underlying discrimination claim was critical to both of these issues, the court finds Plaintiff's work on the unsuccessful discrimination claims did contribute to the success of the retaliation claim. That work is therefore at least partially compensable.

Plaintiff's preparation and presentation of evidence of the underlying discrimination would undoubtedly have been less extensive had she pursued the retaliation claim by itself. Plaintiff is therefore not entitled to recover all fees relating to her unsuccessful claim, some of which were incurred more than two years prior to the time at which the successful claim arose. In assessing the extent to which Plaintiff's work on the discrimination claim contributed to the ultimate success of the retaliation claim, the court attempts to determine what work Plaintiff might have done had she brought only the single retaliation claim, focusing on four stages of the litigation: the time before Plaintiff filed her retaliation complaint, the time between filing that complaint and the denial of summary judgment, the time devoted to trial preparation and the trial itself, and the time post-verdict.

### A. Before Filing the Retaliation Complaint:

The first incident of alleged retaliation in this case was Flanagan's confrontation with Veronica Ballard on March 17, 2004. As no facts giving rise to the successful claim of retaliation had occurred before that date, the court concludes that all activity and preparation undertaken by Plaintiff's counsel prior to March 17, 2004 were geared exclusively toward advancement of the unsuccessful discrimination claims. The time records submitted by Plaintiff's counsel indicate that Plaintiff's attorneys took no action with regard to any alleged retaliation until March 23, 2004. (DeRose time sheets, Att. 2 to Pl.'s Mot. at 4.) Counsel's records reflect a three-hour meeting with Plaintiff on that day, as well as time devoted to drafting a letter regarding "[i]ntimidation of client and witnesses." Plaintiff has not suggested that counsel anticipated a retaliation claim before any retaliatory act had occurred, and any preparation or discovery of evidence supporting the underlying discrimination claim at this stage was of minimal importance or relevance to the ultimately successful retaliation claim. As such, no portion of the hours reported prior to March 23, 2004 will be included in the court's calculation of reasonable attorney's fees for the successful retaliation claim.

Defendant contends that this court should disallow all fees prior to the submission of Plaintiff's complaint for retaliation, which occurred on March 6, 2006. The court understands the Defendant's logic but considers the request slightly too broad, given that (according to their time records) Plaintiff's counsel apparently undertook some preparatory measures addressing and investigating the retaliation issue prior to filing a complaint. (*See* DeRose time sheets, Att. 2 to Pl.'s Mot., entries dated 3/23/04 (3 hours); 09/09/04 (.5 hours); 09/10/04 (.2 hours); 09/14/04(.5 hours); Hill time sheets, Att. 4 to Pl's Mot., entries dated 12/28/04 (.5 hours); 12/29/04(.4 hours)).[5] Based

---

[5] These dates are the ones Plaintiff specifically points to as occasions on which counsel addressed the "retaliation suffered by Plaintiff . . . prior to the filing of her second lawsuit." (Pl.'s Reply at 4.) Having reviewed counsel's time records, the court has no reason to question that
(continued...)

on these time entries in counsel's billing records, the court finds that attorney John DeRose performed 4.2 hours of work and attorney Jessica Hill performed 0.9 hours of work on the ultimately successful retaliation claim, prior to the initiation of the retaliation complaint in March 2006. Plaintiff will recover fees for those hours.

Collection and review of materials relating to the alleged discrimination would have been necessary even had Plaintiff pursued an entirely separate retaliation claim, and familiarity with this material appears to have contributed to Plaintiff's ultimate success on the retaliation claim. The court concludes, therefore, that court costs incurred during this period are sufficiently related to the retaliation claims to qualify for reimbursement, as well. The costs are limited to the filing fee for Plaintiff's 2006 complaint and transcript fees for depositions conducted between 2003 and 2004. Plaintiff will therefore recover all $5,007.80 of her reported costs for this period.

**B.     From Filing the Retaliation Complaint to Summary Judgment**:

Defendant does not contest fees requested between August 2006 and January 4, 2007, the period after Judge Plunkett had consolidated the discrimination and retaliation claims and before this court denied the motion for severance of those claims. It is, thus, undisputed that 126.2 hours of DeRose's time and 41.55 hours of Hill's time are recoverable. It appears that the itemized costs from this period, beginning on August 4, 2006, also relate to Plaintiff's successful retaliation claim; Plaintiff requested recovery for the transcripts for each of the individually-named Defendants in the retaliation suit. (Bill of Costs, Att. 6 to Pl.'s Mot. at 4.) The court concludes those costs are also undisputed and therefore awards $1,445 of costs incurred in this period.

---

[5](...continued)
assertion and concludes this is compensable time.

### C. From Preparing for Trial to Verdict

Following the court's denial of Defendant's motion to sever the claims on January 4, 2007, the parties' preparation for trial "began in earnest." (Def. Resp. at 6.) The sex discrimination claim and the retaliation claim proceeded to a single jury trial. Hence, Plaintiff's preparation and presentation necessarily involved pursuit of the two claims simultaneously. From January 4, 2007 to the return of a verdict on January 29, 2007, DeRose reports having worked 262.5 hours and Hill reports having worked 125.6 hours on the case. (DeRose time sheets, Att. 2 to Pl.'s Mot. at 10-15; Hill time sheets, Att. 4 to Pl's Mot. at 3-7.) Defendant contends that since Plaintiff prevailed on only one of her two claims at trial, Plaintiff's recovery for trial and preparation must be reduced by 50 percent of these reported hours. (Def. Resp. at 7.) *Hensley* expressly rejects the type of mechanical "claim chopping" Defendant urges, however, *see Hensley,* 461 U.S. at 435 n. 11; *see also O'Sullivan v. City of Chicago*, 484 F. Supp.2d 829, 842 (N.D. Ill. 2007), and the court is reluctant to adopt such an approach here. Instead, the court must determine what "legal expenses [the plaintiffs] would have borne if [their] suit had been confined to the ground on which [they] prevailed." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988).

A review of the record shows the discrimination claim and the retaliation claim were not amenable to neat separation at trial. Though the underlying facts of the two claims occurred fully two years apart, the testimony and argument did not come in cleanly divisible portions–this bit relevant for discrimination, that bit relevant for retaliation. Many of the witnesses discussed facts that were pertinent to both the discrimination and the retaliation allegations. Plaintiff's attorneys also interwove their arguments on the two claims such that they were rendered into a single narrative fabric before the jury. To the extent an obvious distinction can be discerned, Plaintiff spent a significantly greater part of her efforts at trial attempting to prove the retaliation claim on which she ultimately succeeded. By way of illustration, out of a 44-page transcription of Plaintiff's closing summary of the evidence, roughly 25 pages address solely the retaliation issue. (DeRose

Closing, 1/26/07 a.m. Trial Tr. 1244-1288.)  In this context, Defendant's argued-for 50 percent reduction in Plaintiffs' fee recovery is excessive.

Flanagan would undoubtedly have presented some of the evidence of claimed discrimination that prompted her initial grievance even if her suit had been confined to the retaliation claim.  Some background was necessary to the context of the case, particularly because Flanagan's credibility was such a crucially important issue.  As in *O'Sullivan*, "[a] showing that [Plaintiff's] complaint of discrimination was warranted may lend credibility to the claim that [she was] retaliated against for speaking out . . . . the perceived discrimination is highly relevant to the claim of retaliation."  *O'Sullivan*, 484 F. Supp.2d at 846.  At several turns, Flanagan's truthfulness and credibility were placed at issue.  As early as its opening statement, Defendant accused Flanagan of "making [false] excuses as to why she was failing [to advance or qualify for weapons carrying]." (Bischoff Opening, 1/16/07 p.m. Trial Tr. 38:1-23.)  Witnesses testified to their unfavorable opinions of Flanagan's character for truthfulness. (See e.g. Loizon, 1/19/07 a.m. Trial Tr. 278.)  The defense strategy was largely focused on undermining Flanagan's memory and her credibility.  For example, Defendant impeached Flanagan on cross-examination by confronting her with misleading tax forms that she had filed.  (*See, e.g.,* Flanagan 1/23/07 p.m. Trial Tr. 794-97; 1/24/07 a.m. Trial Tr. 850-852.)

In no small part, Flanagan's case rose or fell based on whether the jury accepted her characterization of events as an honest account.  Further, the importance of establishing Flanagan's credibility was not diminished because the jury ultimately rejected her discrimination claim.  As noted, to prevail on her retaliation claim, Plaintiff had to demonstrate that her initial complaints were made in good faith.  Flanagan had to convince the jury that she actually believed she had been the victim of discrimination and that her belief was reasonable given the facts. To the extent that a discussion of the discrimination allegations bore on Flanagan's credibility, a competent attorney would have been remiss not to raise them in pursuit of Plaintiff's retaliation

12

claim.

The court concludes that some quantum of evidence and argument on the initial discrimination claims would have been inevitable even if Flanagan had proceeded to trial on the retaliation claim alone. The precise amount of time that would have been dedicated to developing that hypothetical quantum is, of course, uncertain; a suit confined solely to retaliation would not have required counsel to prepare and present discrimination evidence with the same level of detail and particularity as Flanagan did in the consolidated case. Some reduction is therefore necessary. Based on a thorough review of the record and the evidence, the court concludes that 85 percent of Plaintiff's attorneys' reported hours for this period are compensable, as these were devoted to preparing and trying the retaliation claim and to presenting that evidence in support of the discrimination allegations that would have been necessary to succeed on the retaliation claim alone. Based on this calculation, 223.13 hours of DeRose's time and 106.76 hours of Hill's time from this period are compensable.

The itemized court costs expended within this period are all reasonably associated with the costs of trial generally, and therefore need not be reduced at all. The reported amount of $618.62 in costs is fully recoverable.

### D. Post-Trial Motions to the Present

Defendant generally does not contest the fees incurred following the close of trial, with the exception of five specific time sheet entries. Defendant contends 2.75 hours of DeRose's time and 3.0 hours of Hill's time, listed under their respective time sheet entries of 5/5/08, 5/15/08, and 5/16/08, are "not related to these matters." (Def. Resp. at 7.) It is not clear from the time sheets themselves, however, why the reported hours are unrelated; disappointingly, Defendant does not elaborate on the reason for its objection in its brief, and Plaintiff makes no attempt to defend the hours in her response. The entries themselves appear to refer to meetings with Flanagan and phone calls between the parties after judgment, but the documentation is not particularly specific.

13

(See DeRose Supp. to Pl's Mot. at 1; D.E. 97.) "Where documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 424. As Plaintiff makes no attempt to explain these entries in her response and the documentation is not sufficiently specific to overcome Defendant's objection on its face, the court sustains the objection.

Defendant has not challenged Plaintiff's claim for the remaining hours reported by DeRose and Hill for this period, and the court therefore awards fees for 13.5 hours of DeRose's time and 44 hours of Hill's time for this period.

### E. Total Recovery

Defendant does not dispute Plaintiff's proposed hourly rates of $500 per hour for Mr. DeRose and $200 per hour for Ms. Hill, rates that appear to be reasonable based on the lawyers' skill and experience. Based on the court's calculation, DeRose worked approximately 367.03 hours on the successful retaliation claim. Hill worked approximately 193.21 hours on the retaliation claim. Multiplying the hours worked by the attorneys' respective rates generates lodestar amounts of $183,515 for DeRose's fees and $38,642 for Hill's fees. The sum of these two brings the lodestar amount to $222,157.

As explained earlier, the discrimination and retaliation claims in this case do not emerge from a "common core of facts" or "related legal theories" as *Hensley* used those terms, *Hensley*, 461 U.S. at 434-45, and the court therefore need not engage in the process of evaluating the award in the light of the overall "level of success" attained by Plaintiff. Instead, as a final step, the court need only consider and balance the various *Johnson* factors to ensure that the presumptively-appropriate lodestar figure should be awarded here. *Blum v. Stenson,* 465 U.S. 886, 897 (1983) (lodestar presumptively appropriate). The parties themselves have advanced no arguments to alter the lodestar figure based on the *Johnson* factors, and the court agrees that the fee request is in fact reasonable in light of the complexity of the case, the skill with which the case was successfully litigated by the Plaintiff's counsel, and the significance of the results obtained on behalf of the

Plaintiff. The $75,000 compensatory award in Plaintiff's favor constitutes a significant vindication of Flanagan's rights and furthers the important purposes Title VII was designed to achieve, and attorney's fees of $222,157 are not disproportionate to this success. Plaintiff is also entitled to recover for reported clerk fees in the amount of $960.00 and for litigation-related costs in the amount of $7,071.42, bringing the total amount of Plaintiff's recovery for fees and costs to $230,188.42.

## CONCLUSION

Plaintiff's motion for attorneys' fees and costs [72] is granted. The court awards $230,188.42 for Plaintiff's reasonable attorneys' fees and costs incurred in the litigation of her successful Title VII retaliation claim.

ENTER:

Dated: September 28, 2009

_____
REBECCA R. PALLMEYER
United States District Judge